IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY PIETY and ESTHER PIETY,  )
                                 )
            Plaintiffs,          )   No. 6:11-cv-6303-AA
                                 )
       v.                        )   ORDER
                                 )
CITY OF SWEET HOME, a municipal  )
corporation,                     )
                                 )
            Defendant.           )
                                 )
_____)

AIKEN, Chief Judge:

    Plaintiffs bring this action asserting several claims of discrimination in employment under state and federal law.[1]

---

[1] Plaintiffs also asserted a wage claim which the parties resolved prior to the filing of the summary judgment motion. In addition, plaintiff's assert a whistle blower claim, but have conceded that summary judgment is appropriate as to that claim.

1 - ORDER

Defendant seeks summary judgment as to all claims.

Plaintiff Timothy Piety is an African American and his wife, plaintiff Esther Piety, is Caucasian. On January 15, 2009, defendant, City of Sweet Home, hired plaintiffs to be caretakers for the City's Sankey park.

Craig Martin, the City Manager, and Carol Lewis, the Community Development Director, were part of the Committee that interviewed applicants for the caretaker job at Sankey Park. Lewis made the decision to hire plaintiffs with input from Martin.

Pursuant to the employment agreement, defendant agreed to provide plaintiffs use of a manufactured home and to pay certain utilities in exchange for plaintiffs providing 1067 hours of service per year. The services plaintiffs agreed to provide included maintenance and repair work in Sankey Park, as well as providing an onsite presence and park security. The agreement specifically required plaintiffs to "contact people in [Sankey] Park about the park rules, and their conduct, all at the Caretaker's own discretion, with due regard for their own safety." Sankey Park Caretaker Agreement (attached to Declaration of Jens Schmidt (#26) as exhibit 1 to the deposition of Carol Lewis) at p. 2. The agreement further provided that plaintiffs "should report violations of the park's rules when necessary, in order to maintain a safe and attractive facility, to the Community Development Director and/or the Sweet Home Police Department." Id. Either

2 - ORDER

party could unilaterally terminate the agreement with 30 days written notice.

Plaintiff Timothy Piety made numerous calls to the Sweet Home Police during the course of his employment as a caretaker. Plaintiffs also made reports directly to Carol Lewis. In some of the reports and calls, plaintiffs expressed concern that illegal behavior was aimed at them because of Mr. Piety's race or because of their mixed race marriage. For example, Timothy Piety reported: refusals to obey orders to leave the park; harassing behavior and racial slurs directed toward plaintiffs and their home; veering of vehicles in Timothy piety's direction; torturing and killing of a stray cat attended to by plaintiffs' children; threats; rock throwing at plaintiffs' house; yelling of racist comments combined with tossing liquid on Timothy Piety; racist graffiti; vandalism to Timothy Piety's car; and blocking of plaintiffs' vehicle.

Plaintiffs met with City staff on at least three occasions to address their concerns. On July 19, 2009, Timothy Piety sent an e-mail to Carol Lewis detailing his discovery of racist graffiti in the park and mentioning that he had been carrying a concealed weapon at night when performing his caretaker duties. That same month, Timothy Piety met with Lewis, the Chief of Police Robert Burford and the school resources officer John Trahan about the graffiti among other issues. Lewis expressed concern about the need to carry a gun.

3 - ORDER

In 2010, plaintiffs met with Lewis, Burford and Craig Martin to request more specificity about the City's expectations of them as caretakers. Esther Piety suggested that the City coordinate with the school district in supervising teenagers. Lewis prepared a list of caretaker expectations which included reporting and documenting gang related graffiti, calling the police when suspicious behavior is detected, educating those exhibiting bad behavior first with enforcement second, calling the police if misbehaving people do not respond to directions, reporting illegal activity, reporting vandalism, and reporting injuries. Burford and Lewis felt that the suggestion to coordinate with the school district on teenager issues was not feasible. Plaintiffs felt that the list did not actually address their concerns on how to deal with unruly students.

The City contends it took several steps to address plaintiffs' concerns. The City installed five or six security cameras in the park. The City built a fence at the caretakers' residence. The City also offered to post no trespassing signs at the caretakers' residence. Plaintiffs felt the cameras were not placed where they would assist them with their concerns. Plaintiffs also felt the fencing was inadequate and that no trespassing signs would do more harm then good.

The City estimates that Timothy Piety made approximately 117 calls to the Sweet Home Police during a 19 month period. While the

4 - ORDER

police responded to the park for many of the calls, only one person was actually cited. Plaintiffs feel that the police would not take appropriate action in response to their calls. In some instances, plaintiffs contend, they were subjected to racial oppression, but the police pointed the finger at plaintiffs as the problem. Plaintiffs assert that the police abused their authority by protecting the wrongdoers and blaming plaintiffs for incidents at the park.

Plaintiffs assert that they were continually subjected to harassment and told City officials they needed to use cameras to document the problems. City officials expressed concerns about using video cameras and asked them to come up with a different solution. Plaintiffs assert that Chief Burford suggested that they move out of town for their safety.

Over time, both Carol Lewis and Craig Martin became concerned about the amount of conflict between Timothy Piety and park users. During the plaintiffs' 19 month tenure, Lewis claims she received 10 to 20 personal visits from citizens who complained about Timothy Piety's manner of enforcing park rules and to express nervousness over his videotaping them. In light of the City's concerns, Martin asserts he decided to terminate plaintiffs' employment after consulting with Lewis. Martin terminated plaintiffs employment in writing in a letter delivered to plaintiffs on August 31, 2010. There are no complaints noted in plaintiffs' personnel files and

5 - ORDER

the plaintiffs were never disciplined or threatened with discipline prior to August 31, 2010. The City agrees that other than the ability to manage conflicts and interpersonal interactions with users of the park, plaintiffs performed their job as caretakers satisfactorily. In addition, the City does not point to any shortcomings on the part of Esther Piety.

On August 28, 2010, just prior to receiving notice of termination, Timothy Piety submitted a "Citizen's Comment Statement" to the Sweet Home Police Department. The statement addressed concerns about harassing behavior and that he felt that the police had failed to take appropriate action. Mr. Piety stated that if in the future the police failed to take action, then the Pietys would file their own complaints against the offenders. Chief Burford opened an inquiry, but closed it on August 30, 2010, when informed by Mr. Piety that he had been counseled not to cooperate. Both Burford and Craig Martin assert that Martin was not aware of the statement until after Martin delivered the letter of termination.

Plaintiffs assert claims of race discrimination, hostile work environment, and retaliation. Plaintiffs also assert a claim of deprivation of their civil rights.

A.  Race Discrimination Claims

Plaintiffs allege claims for race discrimination under Title

6 - ORDER

VII (42 U.S.C. § 2000e-2), O.R.S. § 659A.030, and 42 U.S.C. § 1981. All three claims are analyzed in the same manner. See <u>Dawson v. Entek Intern.</u>, 630 F.3d 928, 935 (9th Cir. 2011) (Title VII and O.R.S. 659A.030 claims analyzed together); <u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 797 (9th Cir. 2003) (legal principles guiding a court in a Title VII dispute apply with equal force in a section 1981 action).

Plaintiffs allege they were discriminated against because Timothy Piety is African American and Esther Piety is involved in an interracial marriage. Although plaintiffs' counsel asserts that there is direct evidence of discrimination by defendant, plaintiffs have not presented evidence of direct discriminatory animus. The evidence requires a trier of fact to draw an inference of such animus. While there is evidence that plaintiffs were subjected to racial slurs and graffiti combined with threats of violence based on race, no such acts were undertaken by a representative of the City. A trier of fact would have to draw an inference that the actions of plaintiffs' supervisors and the police department were motivated by race. In essence, plaintiffs seek to prove that they were discharged from their employment with the City because of race. In this case, such proof must be made with circumstantial evidence given the lack of direct evidence demonstrating such motivation.

Accordingly, plaintiffs may establish a prima facie case of

7 - ORDER

discrimination by demonstrating (1) that plaintiffs belong to a protected class; (2) that plaintiffs performed their job satisfactorily; (3) that plaintiffs suffered an adverse employment action; and (4) that plaintiffs' employer treated plaintiffs differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If plaintiffs establish a prima facie case, then defendant can rebut the presumption of discrimination that arises by producing evidence showing that defendant undertook the challenged employment action for a "legitimate, nondiscriminatory reason." Id. If defendant rebuts the presumption, then plaintiff can defeat summary judgment by offering evidence demonstrating the proffered explanation is a pretext for discrimination. See Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995) (to survive summary judgment, plaintiff must produce enough evidence to allow a reasonable fact finder to conclude either that the alleged reason for discharge was false, or that the true reason for the discharge was a discriminatory one).

Plaintiffs do belong to a protected class and suffered an adverse employment action. In addition, while the City asserts that plaintiff Timothy Piety's ability to manage conflicts and interpersonal interactions with users of the park demonstrated unsatisfactory work, the City does not suggest that plaintiff

8 - ORDER

Esther Piety was not performing satisfactorily. Moreover, a trier of fact could conclude that the City's perception of Timothy Piety's conflicts and interactions was itself the product of discrimination.

Although plaintiffs cannot point to an adequate similarly situated employee belonging to an unprotected class,[2] the court is reluctant to grant summary judgment on this basis. Plaintiffs have produced evidence that might a lead trier of fact to infer that the perception of poor conflict management is in reality discriminatory animus on the part of the park users. While defendant is not generally responsible for discrimination of non-employees, it is not justified in termination as a form of victim-blaming. The court is also concerned that, while the City did make some efforts to address plaintiff's concerns, it did not note formal complaints and relies on Lewis' memory of 10-20 complaints (although she was unable to recall any names of the complainants) that were not reduced to a writing and placed in plaintiffs'.personnel file. A trier of fact could conclude that a similarly situated employee who is not a member of a protected class would not be treated as

---

[2]Plaintiffs point to a parks maintenance worker outside their protected class who was terminated after committing the crime of assault, and suggest that inability to manage conflicts short of criminal behavior would not merit termination of a non-suspect class member.

9 - ORDER

plaintiffs were in this situation.[3]

For the same reason, the court cannot grant summary judgment on the basis of the City's proffered reason for termination. An employer is justified in terminating a member of a protected class because of an inability to carry out an essential function of the job, such as competent contact with park users about rules and conduct. However, a trier of fact in this case could conclude that the park users were refusing to cooperate with plaintiffs and engaging in harassing conduct because of plaintiff Timothy Piety's race. The evidence is susceptible to an inference that plaintiffs were terminated not because of a legitimate inability to perform the required job duties, but because it was easier to remove the victims of racism from employment than to deal with park users

---

[3]The type of discrimination alleged here is difficult to analyze because the direct discrimination is alleged to come from the people the City serves and the City's reaction to that discrimination. As such, it would be difficult to find a similarly situated non-African American employee because such employee would not be subject to racist behavior from the people the City serves. Accordingly, the court declines to grant summary judgment at this stage so that a trier of fact can determine the reasonableness of the City's response to its perception of plaintiff's apparent lack of conflict management skills. The fact that the City did not note any conflict management problems on the part of plaintiff Esther Piety provides further support for the inference that the City acted with an intent to eliminate the victims of racism rather than to address a true inability to perform the work. While a hostile work environment claim may be better suited to address this issue, an employer should not escape liability for race discrimination in this context.

10 - ORDER

engaging in discriminatory conduct.[4]  See Lowe v. City of Monrovia, 775 F.2d 998, 1006-08 (9th Cir. 1985) (a plaintiff can establish a prima facie case of disparate treatment without satisfying the McDonnell Douglas test if he or she provides evidence providing an inference the employment decision was based on discriminatory criteria and such evidence may survive summary judgment by itself). Accordingly, defendant's motion for summary judgment as to plaintiffs' claims of race discrimination is denied.

B.  Hostile Work Environment

Like their race discrimination claims, plaintiffs bring hostile work environment claims under Title VII, O.R.S. § 659A.030, and 42 U.S.C. § 1981 and the analysis is the same for each. To establish a prima facie hostile work environment claim, plaintiffs must raise a triable issue of fact as to whether (1) they were subjected to verbal or physical conduct because of their race or association, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of their employment and create an abusive work environment. Kang v. U. Lim

---

[4]This also demonstrates why defendant is not entitled to a presumption of lack of discriminatory intent based on the "same actor inference." Although both Carol Lewis and Craig Martin had input into both the decision to hire and fire, the theory of discrimination in this case is not direct animosity on the part of the employer, but termination of employment to avoid what plaintiffs have alleged is pervasive racism suffered at the hands of the people with whom the City hired plaintiffs to interact.

11 - ORDER

Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002). Defendant concedes, for purposes of its motion, that plaintiffs were subjected to a hostile work environment, but contend it is not liable for that environment.

In this case, the harassing behavior came not from the employer or its employees, but from essentially the customer, i.e., the park users. The City may be held liable for harassment on the part of a private individuals where the City either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct. Folkerson v. Circus Circus Enters., Inc., 107 F.3d 754, 756 (9th Cir. 1997). In such instances, the hostile environment liability of the employer is grounded in negligence and ratification rather than intentional discrimination. See Swenson v. Potter, 271 F.3d 1184, 1191-92 (9th Cir. 2001). Therefore, once the City became aware of the harassing behavior of the park's users, it was required to undertake remedial measures reasonably calculated to end the harassment. McGinest v. GTE Service Corp., 360 F.3d 1103, 1120 (9th Cir. 1004). The reasonableness of such remedial measures would depend on the City's ability to stop the harassment and to deter potential harassers, as well as the promptness of the response. Id.

Here the City has presented evidence of quickly responding to most of the complaints made by plaintiffs by sending the police to

12 - ORDER

the park to investigate. The City asserts that in many cases, the offenders were unidentified and engaged in a great variety of conduct.

The City also installed security cameras, installed a fence and offered to post a no trespassing sign. However, given that only one citation was issued[5] and that the harassing behavior continued, it is for a trier of fact to determine whether the City's response was reasonable. Plaintiffs assert that the police generally refused to cite, arrest or pursue individuals engaged in illegal activities prompted by racist attitudes. A trier of fact could conclude that the police and the City may have found it easier to eliminate the target of illegal racist activity than to investigate and eliminate the activities themselves. Accordingly, summary judgment is not appropriate as to plaintiffs' hostile work environment claims.

## C.  Retaliation

Plaintiff Timothy Piety was the only African American working for the City and made complaints of racial harassment. Plaintiffs assert that they were terminated because of the complaints. Plaintiffs retaliation claims under Tile VII, O.R.S. § 659A.030, and 42 U.S.C. § 1981 are analyzed in the same manner.

---

[5]That citation was not based on the reason Timothy Piety made the call for police assistance, but was because the cited person refused the police officer's order to leave the park.

13 - ORDER

To establish a prima facie retaliation claim, plaintiffs must show 1) involvement in a protected activity, 2) an adverse employment action taken against them, and 3) a causal link between the two. See <u>Little v. Windermere Relocation, Inc.</u>, 301 F.3d 958, 969 (9th Cir. 2002). The City concedes, for purposes of this motion, that plaintiffs engaged in protected activity, but contend that there is no link with the decision to terminate them.

As noted above, a trier of fact could conclude that rather than engage in the effort to investigate and redress/prevent the harassing behavior of allegedly racist park patrons, the City chose to eliminate the one and only target of the racist activity. Such a finding would provide a connection between the complaints of racial harassment and the termination. Accordingly, summary judgment is not appropriate as to plaintiffs' retaliation claims.

D. <u>Equal Protection</u>

Plaintiffs assert that the Sweet Home Police failed to address the calls and complaints they made and did not provide them with the full measure of police protection they were entitled to as City residents and employees.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. This "is essentially a direction that all similarly

14 - ORDER

situated persons should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, (1985). To establish a section 1983 equal protection violation, plaintiffs must show that the defendant, acting under color of state law, discriminated against them as a member of an identifiable class and that the discrimination was intentional or resulted from deliberate indifference. Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134 (9th Cir. 2003).

Although defendant has presented evidence of numerous responses to plaintiffs' calls, the record does not show much in the way of action taken to address and prevent the conduct via citation, arrest, or in-depth investigation. A trier of fact could conclude that because the victim was the only African American employee of the City and he was subjected to pervasive and ongoing racial harassment, the police and the City chose to take the easier path and eliminate the victim from the conditions rather than change the conditions. Although the record is not developed on this point, presumably the police department would not fail to investigate, arrest, and cite conduct directed at employees of the City who were not suffering from crimes instigated by race or decide instead to terminate the employee.

Moreover, the City's policymakers were involved in the decisions regarding the response to the calls and the termination of plaintiffs. Indeed, the City asserts that it was the conflicts

15 - ORDER

that prompted the decision to terminate. Accordingly, summary judgment as to plaintiffs' section 1983 claim is not appropriate.


## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (#23) is granted as to plaintiffs' whistle blower claim and is otherwise denied.

DATED this ___8___ day of March, 2013.

_____
Ann Aiken
United States District Judge

16 - ORDER